**ORIGINAL**

In the United States Court of Federal Claims
No. 16-1250C

(Filed: September 6, 2018)

**FILED**

**SEP 06 2018**

**U.S. COURT OF FEDERAL CLAIMS**

*************************************

| | |
|---|---|
| **LOUISE N. PEARSON,** ) | Claim for disability retirement from the |
| ) | military; 10 U.S.C. §§ 1201, 1202; |
| ) | administrative grant of full relief on the |
| **Plaintiff,** ) | permanent disability retired list; mootness; |
| ) | disability rating during period on the |
| **v.** ) | temporary disability retired list |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

*************************************

Louise Pearson, *pro se*, Acton, CA.

Lauren S. Moore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Chad A. Readler, Acting Deputy Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Plaintiff Louise Pearson, CAPT (ret.), United States Navy, brought suit seeking additional military retirement pay she contends she is owed due to an improper disability rating given to her by the Navy. Compl. ¶ 1. CAPT Pearson was temporarily retired from the Navy for medical reasons (*i.e.*, placed on the Temporary Disability Retired List, or "TDRL") on May 15, 2008 at a 60% disability rating. Compl. ¶ 9. She was permanently retired for medical reasons (*i.e.*, placed on the Permanent Disability Retired List, or "PDRL") on October 1, 2010 at the same 60% disability rating and for the same conditions. Compl. ¶ 9. CAPT Pearson filed her complaint with this court on September 30, 2016, at a time when a petition by her for relief was still pending before the Navy's Board for Correction of Naval Records (the "Board" or "Navy Board"). At the request of the parties, the case was stayed by the court to allow the Navy Board to complete its work. In due course, the Board acted to amend her disability rating to reflect 100% disability as of her permanent retirement date. CAPT Pearson contends she should have also received an 80%-to-100% disability rating during her temporary retirement. Compl. ¶ 17.

The United States has moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 23. The government asserts that CAPT Pearson's claim became moot upon the award of relief by the Navy Board because she had requested from the Board a higher disability rating starting with either her temporary retirement or permanent retirement. Def.'s Mot. at 1.

CAPT Pearson contends that she received only partial relief from the Board, as the Board granted relief relating only to her permanent retirement. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 3, ECF No. 24; Hr'g Tr. at 16:6 to 18:7 (Aug. 9, 2018).[1] Simultaneously with her response to the government's motion, CAPT Pearson filed a motion to amend her complaint to request relief specifically for both her temporary and permanent retirements as opposed to relief in the alternative. Pl.'s Mot. to Amend Compl. ("Pl.'s Mot. to Amend"), ECF No. 25. Each party has filed briefs addressing the motion to dismiss and the motion to amend, and a hearing was held on August 9, 2018. At the hearing, the court requested supplemental briefs regarding whether the Board had considered CAPT Pearson's request to review her disability rating during her temporary retirement. Both parties filed supplemental briefs on August 21, 2018, and the motions consequently are ready for decision.

The issues before the court are: (1) whether CAPT Pearson's claim is mooted by the relief afforded by the Navy Board in May 2017 and (2) whether the court should allow CAPT Pearson to amend her complaint to reflect an independent request for relief during the period of her temporary retirement.

The court concludes that CAPT Pearson's claim has been rendered moot by the administrative proceeding before the Navy Board, which granted the relief sought by CAPT Pearson. Therefore, this court now lacks jurisdiction. Accordingly, the government's motion to dismiss the complaint is GRANTED. CAPT Pearson's motion to amend the complaint is DENIED because this court would lack jurisdiction to hear the temporary retirement claim due to a time-bar by the statute of limitations.

## FACTS

CAPT Pearson sustained injuries in 2004 while serving on active duty in the United States Navy. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss ("Def.'s Reply") Suppl. App. at 2, ECF No. 26 (containing CAPT Pearson's Board application). The Navy convened an informal Physical Evaluation Board ("PEB") on October 17, 2007 to evaluate her conditions. Def.'s Resp. to Ct.'s Inquiries App. at 30, ECF No. 33. The informal PEB recommended temporary retirement at a 60% disability rating. *Id.* CAPT Pearson rejected the findings on November 9, 2007, but then, on February 22, 2008, decided to accept the findings, foregoing a proceeding before a formal PEB. *Id.* App. at 36 (initial rejection), 32 (acceptance). She was temporarily retired due to disability on May 15, 2008 at a 60% disability rating. Compl. ¶ 9. CAPT Pearson subsequently was evaluated by the Social Security Administration and the Department of Veterans Affairs. Compl. ¶ 10-12. The Social Security Administration found CAPT Pearson to be totally disabled on October 19, 2008, with an effective disability date of

---

[1] Further citations to the transcript of the hearing held on August 9, 2018 will omit reference to the date.

June 1, 2006. Compl. ¶ 11. The Department of Veterans Affairs found CAPT Pearson to be totally disabled on July 7, 2010, with an effective disability date of July 17, 2008. Compl. ¶ 12. Following a second PEB, CAPT Pearson was permanently retired on October 1, 2010 at a 60% disability rating and for the same conditions. Compl. ¶ 9. This case arose because CAPT Pearson disputed the assigned disability rating, arguing it should be "at least 80% and as much as 100%," Compl. ¶ 17; Pl.'s Resp. at 3, which would generate an increase in her retirement benefit, Compl. ¶ 18; Pl.'s Resp. at 3-4.

CAPT Pearson sought review of her disability rating before the Navy Board on August 23, 2013. Def.'s Mot. at 2-3; Def.'s Reply Suppl. App. at 1. She claimed that the Navy evaluated her medical condition erroneously when retiring her and failed to consider the entirety of her medical records, resulting in a lower disability rating than warranted, *see generally* Def.'s Reply Suppl. App., and consequently, less retirement pay than should have been allowed.

CAPT Pearson filed suit in this court on September 30, 2016 while her Navy Board application was still pending. Def.'s Mot. at 2-3. In December 2016, this court granted an unopposed motion to stay proceedings to allow additional time for the Board to issue a decision. In May 2017, the Navy Board corrected CAPT Pearson's military record to reflect a 100% disability rating effective October 1, 2010. Def.'s Mot. at 3 & App. at 3-4 (Board decision). As a result, she began receiving retired pay at a 100% disability rating and also received back pay though October 1, 2010 for the monetary difference attributable to the increased disability rating. Def.'s Mot. at 3. The Board did not change her disability rating during the period she was on the TDRL, Def.'s Mot. App. at 2-3, and CAPT Pearson seeks additional back pay covering that period. She argues that she should have received retired pay during temporary retirement at an 80% or 100% disability rating, not at a 60% rating. Pl.'s Resp. at 1, 3.

In briefs to this court submitted subsequent to the Navy Board's decision, CAPT Pearson contends that the Navy's denial of certain treatment was retaliatory and that she consented to the temporary retirement disability rating only under duress. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Amend the Compl. ("Pl.'s Reply") at 2-6, ECF No. 28; *see also* Hr'g Tr. at 28:15 to 31:18.[2] The Command Inspector General ("Inspector General") of Marine Corps Base Camp Lejeune initiated a "command climate" investigation into CAPT Pearson's unit in January 2008.

---

[2] In an advisory opinion by the Navy's Council of Review Boards ("Council of Review"), which was considered by the Navy Board, the Council of Review makes a brief reference that CAPT Pearson may have accepted the disability rating for her temporary retirement with "reported significant reservations." Def.'s Resp. to Ct.'s Inquiries App. at 39 (Council of Review Advisory Opinion to Board (May 22, 2017)). It is not apparent whether these "reservations" refer to the alleged duress or merely to disagreement with the assigned rating. The first reference in the record before the court to duress or involuntary acceptance of the informal PEB occurs in Plaintiff's Reply at 2-6.

The Council of Review Boards hears direct appeals from the Navy Physical Evaluation Board. *See* SECNAVINST 1850.4E, ¶ 4. This entity was previously known as the Naval Council of Personnel Boards. *Id.*; *see also* Pl.'s Reply App. at 1-2.

*See* Pl.'s Reply at 3 & App. (Inspector General's Report of Inquiry).³ The Inspector General's report substantiated CAPT Pearson's claims about being denied proper medical care, although there is no discussion of retaliation regarding her PEB or signing under duress to accept the informal PEB's findings and to waive a formal PEB. Pl.'s Reply App. at 99-100.

The Inspector General's investigation began after the informal PEB recommended temporary retirement at 60% disability on October 17, 2007. *See* Def.'s Resp. to Ct.'s Inquiries App. at 30 (Findings of the Physical Evaluation Board Proceedings (Oct. 17, 2007)). Prior to the start of the Inspector General's investigation, CAPT Pearson had rejected the PEB's findings on November 9, 2007 and requested a formal PEB. Def.'s Resp. to Ct.'s Inquiries App. at 36 (rejection). While the investigation was still underway, CAPT Pearson decided on February 22, 2008 to accept the informal PEB's findings and withdraw her request for a formal PEB. *Id.* App. at 32 (acceptance). The Inspector General's investigation concluded two months before CAPT Pearson was placed on the TDRL. Pl.'s Reply App. at 1.

## STANDARDS FOR DECISION

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not, however, provide a plaintiff with any substantive rights. *United States v. Testan*, 424 U.S. 392, 398 (1976). To establish this court's jurisdiction under the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *Testan*, 424 U.S. at 398). Claims for disability retirement pay, whether for temporary or permanent retirement, are money-mandating claims. 10 U.S.C. §§ 1201-02.

The court must retain jurisdiction throughout the entirety of litigation. With limited exceptions inapplicable here, if the controversy ceases to exist during pendency of litigation, the case becomes moot and thus non-justiciable. *See Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008) ("[T]o avoid dismissal for mootness, an actual controversy must remain at all stages, not merely at the time the complaint is filed.") (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)). A controversy ceases to exist, and thus becomes moot, when "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Tunik v. Merit Sys. Protection Bd.*, 407 F.3d 1326, 1331 (Fed. Cir. 2005) (citing *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)) (internal citation and quotation marks omitted). A case that becomes moot must be dismissed for lack of jurisdiction. *See Gerdau Ameristeel*, 519 F.3d at 1340. Standing doctrines including

---

³The Inspector General's report is heavily redacted under Freedom of Information Act exemption 7(C). *See* Pl.'s Reply App. at 4-8 (redacting per "(b)(7)(C)", *i.e.*, 5 U.S.C. § 552(b)(7)(C)).

4

mootness arise from the case-or-controversy requirement of Article III of the Constitution. *E.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *see also North Carolina v. Rice,* 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question" that "derives from the requirement of Article III . . . [of a] case or controversy.)") (citing *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n.3 (1964)). These doctrines apply to this court. *Anderson v. United States,* 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims . . . applies the same standing requirements enforced by the other federal courts created under Article III."); 28 U.S.C. § 2519 (empowering the Court of Federal Claims to enter final judgments in any "claim, suit, or demand against the United States arising out of matters involved in the case or controversy").

A claim in this court is "barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The six-year statute of limitations specified in Section 2501 is jurisdictional, *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133-36 (2008), and is not susceptible to equitable tolling or any of the other doctrines that would excuse an untimely claim, *id.* at 133-34. "Courts created by statute can have no jurisdiction but such as the statute confers." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818 (1988) (quoting *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 499 (1850)).

CAPT Pearson, as plaintiff, must establish jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc. v. United States,* 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988)). When ruling on the government's motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995)). "If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law." *Gray v. United States,* 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed. Cir. 1985)); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Review of Decisions by a Military Correction Board

"The Court of Federal Claims reviews a Board decision to determine if it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Roth v. United States,* 378 F.3d 1371, 1381 (Fed. Cir. 2004) (citing *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983)); *accord Melendez Camilo v. United States,* 642 F.3d 1040, 1044 (Fed. Cir. 2011). The arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000).

### C. Amending Pleadings Under Rule 15(a)

"A party may amend its pleadings once as a matter of course within [] 21 days after service . . .; or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or . . . a motion under RCFC 12(b) . . . ." RCFC 15(a)(1). "In all other cases, a party may amend its pleading only with [either] the opposing party's written consent or the court's leave." RCFC 15(a)(2).

"The court should freely give leave when justice so requires," RCFC 15(a)(2), although the decision is "within the discretion of the trial court," *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989). While "that discretion should be exercised liberally," a court may deny amendment for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Mitsui Foods*, 867 F.2d at 1403-04 & n.4 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotes omitted).

## ANALYSIS

### I. Whether Relief Afforded by the Navy Board Renders Moot CAPT Pearson's Claim

The salient issue is whether CAPT Pearson's complaint is moot given the relief afforded to her by the Navy Board. The Navy Board considered whether to adjust CAPT Pearson's disability rating for both her temporary retirement and permanent retirement, and decided only to grant relief effective upon her permanent retirement. The advisory opinion of the Council of Review specifically had addressed both CAPT Pearson's permanent and temporary retirement, and found that insufficient evidence existed to change either. *See* Def.'s Resp. to the Ct.'s Inquiries App. at 39-40 (Council of Review Advisory Opinion). CAPT Pearson's rebuttal to that opinion reiterated a claim for relief for both her temporary and permanent retirement. *Id.* App. at 44 (Rebuttal). The Navy Board's decision indicated that it considered the advisory opinion and CAPT Pearson's rebuttal, *id.* App. at 51, 53 (Board decision), and that the board "substantially concurred with the opinions" of the Council of Review regarding the temporary retirement disability rating, consequently rejecting relief relating to temporary retirement, *id.* App. at 52. The Board stated, regarding the two non-rated conditions raised by CAPT Pearson relating to her temporary retirement, that "sufficient evidence exists to support the Navy's decision not to refer [CAPT Pearson] to the PEB for any mental health conditions or bi-lateral upper extremity radiculopathy[, and the Board] concluded that no relief was warranted regarding [her] request to add those two conditions . . . to her PEB record." *Id.* App. at 53. The Board, therefore, granted "partial relief," amending only the disability rating for her permanent retirement, *id.* App. at 53, stating that "[n]o other relief is warranted," *id.*; *see also* Hr'g Tr. at 39:14 to 40:13.

The parties nonetheless disagree over whether the relief awarded is complete. The government contends that CAPT Pearson received the relief she requested from the Board because she asked for relief effective from *either* the date of permanent retirement *or* temporary retirement, one of which she was granted. Def.'s Resp. to Ct.'s Inquiries at 2; Def.'s Reply at 2-3; *see also* Compl. ¶ 17 ("Had her case been properly adjudicated, [CAPT Pearson] should have been retired, *either* originally *or* upon [permanent retirement], with a rating of at least 80% and as much as 100%.") (emphasis added); Def.'s Opp'n to Pl.'s Mot to Amend the Compl. ("Def.'s Opp'n") Suppl. App. at 1 (Board application form) (requesting corrections to permanent retirement only), ECF No. 27. CAPT Pearson responded by arguing that her complaint requests corrections to both her temporary and permanent retirement, Pl.'s Resp. at 2-3; Pl.'s Reply to Def.'s Reply to Opp'n to Def.'s Mot. to Dismiss ("Pl.'s 2d Resp.") at 1, ECF No. 29.; Hr'g Tr. 16:6 to 18:7 (Aug. 9, 2018), attributing the disjunctive language to a "scrivener's error" by her former attorney, Pl.'s Mot. to Amend at 1, 6. In contrast to the complaint, filings before the Navy Board did not seek relief in the alternative. *See* Def.'s Opp'n Suppl. App. at 3, 5 (Board

application narrative) (requesting relief for temporary retirement separate from relief for permanent retirement); Def.'s Resp. to Ct.'s Inquiries App. at 44 (advisory opinion rebuttal) (requesting separate relief).

In short, CAPT Pearson's submissions to the Navy Board indicate that she requested relief regarding her permanent retirement separate from her temporary retirement. Her complaint before this court, however, indicates otherwise. She contends that if the Navy had acted properly, she should have been given a higher disability rating "either [] on the Temporary Disability Retirement List ('TDRL') or the Permanent Disability Retirement List ('PDRL') . . . ." Compl. ¶ 3. CAPT Pearson reiterates that "[h]ad her case been properly adjudicated, she should have been retired, either originally or upon the PDRL, with a rating of at least 80% and as much as 100%." Compl. ¶ 17. The Navy Board's decision remedies the harm caused to CAPT Pearson insofar as her permanent disability rating has been increased to 100% effective October 1, 2010 and she has received all back pay owed to her due to the correction. The disjunctive language of the complaint creates options to afford relief, and the Navy Board's decision satisfies one of those options. Consequently, the relief requested in the complaint has been provided. Absent amendment of the complaint, CAPT Pearson's claim has been mooted in this court by her success before the Board.

## II.   Whether CAPT Pearson Can Amend Her Complaint

CAPT Pearson's proposed amendment to her complaint would request relief on her temporary retirement claim independently from her permanent retirement claim. Permitting the amendment would render the Navy Board's relief as partial, allowing for this suit to proceed regarding back pay owed during the 28 months of CAPT Pearson's placement on the TDRL. CAPT Pearson filed her motion to amend her complaint on June 28, 2018, more than 21 days after May 31, 2018, when the government filed its motion to dismiss under RCFC 12(b)(1). *See* RCFC 15(a)(1)(B). The amendment therefore requires this court's permission, *see* RCFC 15(a), and the government opposes the proposed amendment, *see generally* Def.'s Opp'n.

### A.  *Prejudice to the Government*

The government contends that amendment of the complaint would prejudice its posture in the case. Def.'s Opp'n at 3-4. Amending the complaint "at this late date would require the parties, as well as the [c]ourt, to litigate issues that could have, and should have[,] been litigated earlier," especially given that the parties had agreed to a stay to let the Navy Board act on CAPT Pearson's request for relief. *Id.*; *see Mitsui Foods*, 867 F.2d at 1403 (court should not permit amendment if prejudicial to the non-moving party).

"Undue prejudice may be found when an amended pleading would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." *Cooke v. United States*, 79 Fed. Cl. 741, 742-43 (2007) (allowing defendant to add an affirmative defense upon realizing its omission when responding to plaintiff's motion for summary judgment). *Tommaseo v. United States,* 80 Fed. Cl. 366, 373 (2008), reached a similar result where an additional set of claims rather than a defense was amended. There, the court found no prejudice in allowing property owners in an inverse condemnation case to amend the complaint to add additional parties with similar factual backgrounds because the government had sufficient

notice of the claims and amendment would not cause surprise, broaden the issues, or require additional discovery. *Id.* at 373-75.

Here, the government has had full knowledge of CAPT Pearson's temporary retirement claim and its factual background. Had the Board not granted relief, both the temporary and permanent retirement claims would be at issue. CAPT Pearson's amended complaint raises no new legal theories nor requires additional consideration administratively by the Board. The timing does not itself constitute undue delay, as CAPT Pearson seeks to amend in response to the government's motion to dismiss. Though untimely for amendment as of right, a pro se plaintiff seeking amendment one month after receiving a motion to dismiss does not connote a lack of diligence. *See, e.g., Tommaseo*, 80 Fed. Cl. at 373 (two years from filing complaint not excessive).

### B. Futility Due to Statute of Limitations

The government further opposes amending the complaint on the grounds that the temporary retirement claim is time-barred by the statute of limitations, and amendment therefore would be futile. Def.'s Opp'n at 3-4. The government argues that the temporary retirement claim accrued on May 15, 2008, the date of her temporary retirement. Def.'s Resp. to Ct.'s Inquiries at 4.

CAPT Pearson filed her complaint on September 30, 2016. Compl. ¶ 1. Her claim must have accrued on or after September 30, 2010 to be within the jurisdiction of this court. *See* 28 U.S.C. § 2501 (specifying a six-year statute of limitations). CAPT Pearson defends her motion to amend by stating that the statute of limitations did not begin to run until May 2017, when the Navy Board issued its decision. Pl.'s Reply at 2-3, 5-6 (citing *Blassingame v. Secretary of the Navy*, 811 F.2d 65, 71 (2d Cir. 1987)). *Blassingame* held the statute of limitations for a challenge to a decision by a correction board ran upon final action by the correction board, and not upon action by the prior review boards or upon discharge. 811 F.2d at 70-71.

As a preliminary matter regarding accrual, disability claims are treated differently from wrongful discharge claims. *See Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005). Claims for a wrongful discharge accrue at the time of discharge, and seeking relief from a correction board is a permissive remedy. *Id.* at 1223-24 (Fed. Cir. 2005) (citing *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)). Contrastingly, claims for "disability retirement generally do not accrue until an appropriate military board either finally denies such a claim or refuses to hear it," and action by a board is mandatory before this court has jurisdiction. *Id.* at 1224. "The decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations," *id.*, and this court does not acquire jurisdiction until after both "the retiring board and the Secretary [have] acted," *id.* (quoting *Furlong v. United States*, 152 F.Supp. 238, 240-41 (Ct. Cl. 1957)). Where a PEB reviewed the request, which will occur pre-discharge, "the limitations period begins to run upon discharge." *Id.* at 1225 (citing *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

For CAPT Pearson, the first board was the informal PEB that convened on October 17, 2007. The recommendation of this board, temporary retirement at 60% disability, resulted in CAPT Pearson being placed on the TDRL on May 15, 2008.

The court in *Cronin v. United States*, 765 F.3d 1331 (Fed. Cir. 2014), addressed the effect of temporary retirement on military service. In *Cronin*, a case with a similar factual background, a Navy officer appealed a decision of the Navy Board to not increase her disability rating. *Id.* at 1332-34. While acknowledging that more than six years had elapsed from the PEB's action that set the disability rating, the officer argued that the statute of limitations was tolled by the Servicemembers Civil Relief Act. *Id.* That Act states that a "period of military service may not be included in computing" the statute of limitations. 50 U.S.C. § 3936. Military service ends upon either release or death and includes "any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause." 50 U.S.C. § 3911. Reversing the trial court, the Court of Appeals for the Federal Circuit held that the Servicemembers Civil Relief Act "did not toll the six-year statute of limitations . . . for the [time] that [the Navy officer] was on the Temporary Disability Retired List under 10 U.S.C. § 1202." *Cronin*, 765 F.3d at 1334. The court noted that upon temporary retirement, the officer received a Form DD-214 (Certificate of Release or Discharge from Active Duty), had no "persisting duty" of service, and could not be returned to service without her consent. *Id.* at 1333, 1335-36; *see also* 10 U.S.C. §§ 1210(f)(1), 1211. Thus, because temporary retirement engenders a discharge and occurs subsequent to action by a competent board, CAPT Pearson's temporary retirement commenced the statute of limitations for her temporary retirement claim. *Chambers*, 417 F.3d at 1225 (commenting that the statute of limitations began to "run upon discharge"); *see also Cronin*, 765 F.3d at 1335-1338 (holding that temporary retirement results in discharge); *Dambrava v. Office of Personnel Mgmt.*, 466 F.3d 1061, 1062 (Fed. Cir. 2006) ("[T]ime spent on the TDRL did not qualify as 'creditable [military] service.'"); *Craft v. United States*, 544 F.2d 468, 476 (Ct. Cl. 1976) (A member on the TDRL "is actually separated from the military.").

CAPT Pearson has not argued that her temporary retirement tolled the statute of limitations, but she does contend that the temporary retirement claim did not accrue upon her placement on the TDRL and her temporary discharge. That contention is unavailing under *Chambers* and *Cronin*, which bind this court to conclude that CAPT Pearson's temporary retirement claim accrued upon temporary retirement on May 15, 2008 and ran continuously thereafter.[4]

---

[4]The record does not indicate whether CAPT Pearson was issued a DD-214 upon her retirement in May 2008. But, CAPT Pearson was receiving retired pay between May 15, 2008 and October 1, 2010. *See* Compl. ¶¶ 1, 9; Hr'g Tr. 5:18 to 6:18. Navy regulations require a DD-214 for "personnel being separated . . . for physical disability." Bureau of Naval Personnel, Certificate of Release or Discharge from Active Duty [DD 214], BUPERSINST 1900.8D, encl. 1 at 1 (2010). Further, Navy regulations state that attending required physical examinations, which apply to a service member placed on TDRL, "do not constitute assignment to active duty." Navy Military Personnel Manual, NAVPERS 15560D, art. 1850-030 Temporary Disability Retired List (TDRL), at 1 (2002).

Alternatively, CAPT Pearson's claim accrued immediately upon the decision of the informal PEB in October 2007, but was tolled by 50 U.S.C. § 3936 until her discharge from active service on May 15, 2008. Either way, the limitations period for the temporary retirement claim commenced on May 15, 2008 and expired on May 15, 2014.

CAPT Pearson's argument that *Chambers* and *Cronin* were rendered inapplicable when the Navy Board issued its decision also fails. First, CAPT Pearson's original complaint does not challenge the Navy Board's decision; she challenged the 2007 and 2010 PEBs. At the time of filing in 2016, the Board had not rendered its decision. If CAPT Pearson's claim did not accrue until the Board issued its decision, she would not have been able to file her original complaint. Her claim would have been unripe for failure to exhaust the administrative remedy provided by the Board, once she sought to invoke it. Moreover, the 2007 PEB was the "first competent board" that triggered the statute of limitations. *Chambers*, 417 F.3d at 1225 (quoting *Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962)). The Navy's action on the PEB's findings gave CAPT Pearson the right to sue, regardless of whether she pursued relief before the Navy Board. Her resort to the Navy Board meant that the Navy Board was the second "competent board" to evaluate her temporary retirement. Because her "first competent board" occurred prior to discharge, her claim accrued upon discharge. *Id.* The Board's decision would only trigger the statute of limitations if CAPT Pearson had not "had or sought a Retiring Board [now PEB]." *Id.* at 1225 (quoting *Friedman*, 310 F.2d at 396).

Second, CAPT Pearson's reliance on *Blassingame* is misplaced. In *Blassingame*, a Marine Corps veteran received an "undesirable discharge" and petitioned discharge review boards twice for a discharge upgrade before applying for relief from a military records correction board. 811 F.2d at 66-68. Again, disability claims are treated differently from wrongful discharge claims regarding the statute of limitations when the board action occurs post-discharge. *Chambers*, 417 F.3d at 1224. The Marine veteran's claim for wrongful discharge in *Blassingame* had a different accrual date from CAPT Pearson's disability claim. As the court in *Chambers* held for retirement disability claims, the decision of the "first competent board" that hears the claim "invokes the statute of limitations" and the "period begins to run upon discharge" if the board acts prior to discharge. *Id.* at 1224-25 (citing *Real*, 906 F.2d at 1560). Moreover, *Blassingame* is not precedential in this court. The Federal Circuit has rejected *Blassingame*'s accrual rule, as noted in that opinion by the Court of Appeals for the Second Circuit, *see Blassingame*, 811 F.2d at 70 (discussing the circuit split), and as recognized in *Martinez*, *see Martinez*, 333 F.3d at 1313 (distinguishing *Blassingame*); *see also Chambers*, 417 F.3d at 1224 (distinguishing wrongful discharge from disability claims).

Third, no claim accrued when the Navy Board denied relief relating to CAPT Pearson's placement on the TDRL because the Board merely failed to remedy the injury allegedly caused by the PEB in 2008, and the Board's rejection of the TDRL claim does not create a second cause of action. *Martinez*, 333 F.3d at 1313 (The plaintiff's "cause of action did not accrue when the Correction Board declined to overturn his separation, because [the correction board] did not cause monetary injury, but merely failed to remedy the injury he had previously suffered."). CAPT Pearson's alleged injury occurred upon her temporary retirement in 2008 following the 2007 PEB. The monetary injury "[does] not accrue for a second time when the Correction Board refuse[s] to grant [petitioner's] request for relief." *Martinez*, 333 F.3d at 1311 (citing *Friedman*, 310 F.2d at 397 ("[I]t does not follow from the general existence of judicial review for Correction Board decisions that those decisions create a new substantive cause of action which has its own, *new*, limitations period.") (emphasis in original)). While *Chambers* clarified the difference between a disability claim and an unlawful discharge claim, it did not disturb *Martinez*'s holding respecting the "second cause of action" theory first rejected by *Friedman*. *See generally Chambers*, 417 F.3d 1218 (citing *Friedman*, 310 F.3d 381, approvingly).

Fourth, CAPT Pearson filed with the Navy Board in 2013, before her temporary retirement claim expired in 2014. But filing before the Board did not toll the statute of limitations because resort to the Board was permissive. While pursuing a mandatory administrative remedy would toll the statute of limitations, pursuing a permissive administrative remedy would not. *Martinez*, 333 F.3d at 1304.

*C. Whether CAPT Pearson's Claim of Duress Would Modify the Time of Accrual*

CAPT Pearson seeks to invoke duress to obviate any bar based on the statute of limitations to her claim for disability in connection with her placement on TDRL. CAPT Pearson specifically argues that she accepted the TDRL findings of the informal PEB under duress, *i.e.*, that her acceptance was involuntary.[5] CAPT Pearson first raised this issue before the court in response to the government's opposition to her motion to amend. There is no mention of duress in the original or proposed amended complaint. Rather, these complaints aver that the PEB erred in evaluating her medical conditions. CAPT Pearson did provide evidence of improper medical treatment, some of which was willfully improper, by providing the Marine Inspector General's report. *See supra,* at 3-4. Evidence of improper medical treatment, however, is not necessarily a basis for a belief that seeking disability review would have triggered retaliation against her, resulting in a lowering or canceling of her disability benefits.

CAPT Pearson cannot challenge for the first time via a reply brief the validity of her waiver and acceptance of the 2007 PEB and thus vitiate the date of her first competent board regarding placement on the TDRL. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006) (ruling that an amended complaint must state a claim and proffer facts to survive a motion to dismiss); *Cook*, 123 Fed. Cl. at 305 & n.15 (rejecting plaintiff's claim of involuntary waiver when he raised it for the first time in a reply brief). Nor can she challenge the Navy Board's decision for failing to consider her claim of involuntary acceptance of the 2007 PEB because the issue of involuntary acceptance of the 2007 PEB does not appear to have been raised before the Board. CAPT Pearson's application to the Board does not aver or allege that she accepted the informal PEB under duress, and duress was not raised when she provided a rebuttal to the Council of Review's advisory opinion. If she had raised the issue before the Board, this court could have considered it. See *Brown v. United States*, ___ Fed. Appx. ___, ___, 2018 WL 4181764, at *1 (Fed. Cir. Aug. 30, 2018). In the procedural setting at hand, however, she cannot bring the claim of duress before the court. *See Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006) (holding that a plaintiff cannot challenge a correction board's decision on grounds not raised before the board, when the plaintiff

---

[5]A knowing and voluntary acceptance of both the findings of an informal PEB and a waiver of a formal PEB precludes this court from reviewing the decision of the informal PEB. *E.g., Cook v. United States*, 123 Fed. Cl. 277, 304-05 (2015) (citing recent cases applying this proposition). CAPT Pearson signed a statement waiving that right and accepting the findings of the informal PEB. Def.'s Resp. to Ct.'s Inquiries App. at 32 (accepting the October 2007 PEB). CAPT Pearson challenges that waiver as involuntary and thus of no effect. The issue, then, is whether her waiver was knowing and voluntary. *See, e.g., Van Cleave v. United States*, 402 F.3d 1341, 1344 (Fed. Cir. 2005); *Stine v. United States*, 92 Fed. Cl. 776, 791-92 (2010).

challenged the voluntariness of his separation for the first time in response to a motion to dismiss, having not raised it in his complaint or before the correction board).[6]

## CONCLUSION

For the reasons stated, CAPT Pearson's claim has been rendered moot by the relief granted by the Board of Correction of Naval Records. Accordingly, the government's motion to dismiss CAPT Pearson's complaint is **GRANTED**. CAPT Pearson's motion to amend is **DENIED** for lack of jurisdiction over her claim for relief related to her placement on the TDRL.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Senior Judge

---

[6]CAPT Pearson may be able to again apply to the Navy Board regarding the issue of waiving a formal PEB under duress, but that would be a matter for the Board's consideration under its equitable powers.